# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

DISORB SYSTEMS, INC.,      )

     )     Case No. CPU4-18-001554

     Plaintiff,      )

     )

     v.      )

     )

BERNARD KATZ, Sole Proprietor d/b/a/      )

TELESONIC PACKAGING CORP.      )

     )

     Defendant.      )

Submitted: December 18, 2018
Decided: January 29, 2019

Bruce W. McCullough, Esquire
Bodell Bove, LLC
1225 North King Street, Suite 1000
Wilmington, DE 19899
*Attorney for Plaintiff*

Bernard Katz
Telesonic Packaging Corp.
805 East 13th Street
Wilmington, DE 19802
*Pro Se Defendant*

## DECISION AFTER TRIAL

The plaintiff, DiSorb Systems, Inc., (hereinafter "Plaintiff"), filed a breach of contract action against the defendant, Bernard Katz, a sole proprietor doing business as Telesonic Packaging Corp., (hereinafter "Defendant"), alleging Defendant breached the contract and warranties associated with the purchase of large machinery. Plaintiff is in the business of manufacturing and delivering medical waste management products. Plaintiff contracted with Defendant, a manufacturer of large machinery utilized for packaging, for the purchase of equipment. One particular piece of equipment sought by Plaintiff would be capable of making a specific water soluble pouch desired by one of Plaintiff's customers. The machine, a PM-150P Automatic V/F/F/S Packaging Machine (hereinafter "Packaging Machine"), was ordered in July

2016. Defendant utilized a Chinese company to build the machine which was delivered one-year later in July 2017. Plaintiff found the machine incapable of making the agreed upon pouch. In August 2017, Defendant made attempts to troubleshoot the machine, at which time Defendant said he would refund Plaintiff's money. In September 2017, Plaintiff returned the machine to Defendant, but to date has not received a refund of the amounts paid. Plaintiff seeks recovery of $24,682.00, plus pre- and post-judgment interest, plus costs. This is the Final Decision and Order of the Court after trial.

## FACTS AND PROCEDURAL HISTORY

Plaintiff's Chief Executive Officer, Edward McLaughlin (hereinafter "Mr. McLaughlin"), contacted Defendant to inquire about Defendant's ability to construct a machine capable of producing a pouch with a three-sided seal, which would contain a unique film made of poly vinyl alcohol ("PVA film"). PVA film is sensitive to atmospheric states, which requires special storage and conversion conditions. The MonoSol Technical Bulletin[1] for the M7031 PVA film states: 1) the film's "ideal storage conditions" are 41 – 77 degrees Fahrenheit and 20 – 50 percent relative humidity; and 2) the film's "ideal conversion room conditions" are 73 degrees Fahrenheit, plus or minus 5 degrees, and 36 percent relative humidity, plus or minus 5 percent. Mr. McLaughlin testified at trial that at a meeting with Defendant, he brought samples of the exact pouch made by competitors that he wished to reproduce. On June 29, 2016, Defendant compiled a quotation for various pieces of equipment. On July 7, 2016, Defendant produced an invoice for Plaintiff's purchase of the following: a) 1 Packaging Machine for $25,150.00; b) 1 BSQ-F2 Automatic Intermittent Motion Vacuum Lifter (hereinafter "Vacuum Lifter") for $3,450.00; c) 1 Discharge

---

[1] MonoSol is a manufacturer of PVA film and the brand utilized by Plaintiff.

2

& Indexing Counting Conveyer (hereinafter "Conveyer") for $5,800.00; and d) Extra film former (hereinafter "film former") for $385.00, for a total of $34,785.00. Plaintiff paid $21,500.00 towards the purchase price at that time. On July 20, 2016, Defendant produced a second invoice for the purchase of 1 FRM-1010 Rotary Band Sealer (hereinafter "Band Sealer") for $3,800.00. Attached to the second invoice is a page containing certain terms of sale[2] as well as a one-page warranty.

The terms attached to said invoice state that Defendant highly recommends for Plaintiff to have a representative present for "machine commissioning" at Defendant's plant, at which time Plaintiff would observe the operation of the machine and receive training free of charge. Defendant's terms also require fifty-percent down payment, with the balance due at acceptable test run before shipment.[3] Defendant's warranty contains the following material terms: 1) seller is "limited either to repairing or replacing defective components," which are shipped to Defendant; 2) the "guarantee shall apply only to components which fail because of defects in material or workmanship provided the equipment has been operated for the purpose and under the conditions for which it was designed;" 3) the guarantee does not apply if equipment or its components have been repaired or altered by someone other than Defendant's authorized personnel;[4] 4) the warranty guarantees against defects in material or workmanship of Defendant's equipment for one year; and 5) the terms of the warranty are "in lieu of all other warranties, whether written, oral or implied."

The Packaging Machine was manufactured in China and subsequently shipped to Defendant. Plaintiff received the equipment in July 2017, one year after the order was placed.

---

[2] Pl.'s Ex. 3 at 2, includes terms for delivery, expected lead time, installation and training, and payment.
[3] The first time Plaintiff was able to test the Packaging Machine with PVA film was at Plaintiff's facility, as Defendant's premises did not have the requisite climate-controlled environment.
[4] Defendant claims Mr. McLaughlin told him that "he had outsiders work on the equipment," thus voiding the warranty. Def.'s Ans. ¶ 9. Defendant abandoned this defense at trial.

3

Upon receipt, the Packaging Machine did not function. Diego Arisi (hereinafter "Mr. Arisi"), a machinist employed by Plaintiff as a senior facilities engineer, testified at trial that he could not get the machine to work. Sometime between the delivery date and August 2, 2017, Mr. Arisi contacted Defendant seeking assistance. Xiao Feng (hereinafter "Mrs. Feng"), Defendant's wife and employee, emailed Mr. Arisi on August 2, 2017, with information on how to operate the Packaging Machine. On August 3, 2017, Mr. Arisi replied asking for someone from Defendant's company to come out to Plaintiff's premises to perform what Mrs. Feng believed would get the machine operable. On August 11, 2017 and August 14, 2017, Defendant and Mrs. Feng visited Plaintiff's premises to inspect the Packaging Machine. Mrs. Feng was the only one to perform work on the Packaging Machine. Defendant admitted at trial that on August 14, 2017, after failing to get the Packaging Machine running, Defendant told Mr. McLaughlin to return the Packaging Machine for a refund. On September 6, 2017, Mr. McLaughlin emailed Mrs. Feng advising her that all equipment,[5] excluding the Indexing Conveyor, would be shipped back to Defendant. Mr. McLaughlin also included directions regarding who to make the refund check to. On September 11, 2017, Plaintiff returned the equipment to Defendant's place of business. Mr. McLaughlin testified during trial that the delay prior to returning the equipment was because Defendant was out of the country and Plaintiff did not want to leave the equipment unattended and outside of Defendant's place of business. On September 14, 2017, Mr. McLaughlin followed up with another email inquiring about the status of the refund check and confirming that all equipment had been returned and crated. On September 19, 2017, Mrs. Feng replied stating Defendant wanted to "make good" and supply Plaintiff with a new machine. The same day, Mr. McLaughlin responded,

---

[5] Mr. McLaughlin explained during testimony that the Vacuum Lifter was only useful if the Packaging Machine worked; the Band Sealer was intended to store the pouches created by the Packaging Machine; the Film Former was also only useful if the Packaging Machine was operable.

4

informing Mrs. Feng that Plaintiff was not interested in a new machine because Plaintiff had already waited a year to receive equipment that did not work and again requested a refund. Mr. McLaughlin testified at trial that the Packaging Machine was only supposed to take ten to twelve weeks to manufacture, but instead took a year, and Plaintiff could not wait any longer. On September 20, 2017, Mrs. Feng emailed Mr. McLaughlin with a balance sheet indicating a balance of $24,682.00, which is the amount Plaintiff is requesting.[6] The same day, Mr. McLaughlin again responded asking when to expect the refund. On December 14, 2017, Mrs. Feng emailed Mr. McLaughlin stating that the Packaging Machine and Vacuum Lifter were functioning properly[7] and needed to be picked up by Plaintiff. Mrs. Feng also advised that Plaintiff's account was considered "PAID IN FULL" and the warranty would be extended for ninety days for latent defects. Defendant admitted they were only able to get the equipment operating on film other than the required PVA film.

## PARTIES' CONTENTIONS

Plaintiff alleges that it bargained with Defendant for a machine capable of making a specific pouch with a three-sided seal containing PVA film. Plaintiff's Chief Executive Officer explained Plaintiff had done business with Defendant previously for equipment and was satisfied. Plaintiff contends that their site was equipped to accommodate the climate-controlled environment necessary for the PVA film and equipment. Plaintiff alleges that Defendant was incapable of testing the Packaging Machine with PVA film at Defendant's site upon delivery from China because Defendant did not have the necessary climate-controlled environment.[8] Plaintiff claims

---

[6] The total purchase price of all equipment was $38,585.00. Plaintiff had paid $30,482.00. The remaining balance owed to Defendants was $8,103.00.

[7] Mr. McLaughlin testified at trial that if the machine would produce a pouch, it came out with a back seam, which was different than the pouch with a three-sided seal Plaintiff had bargained for. Mr. McLaughlin further explained that Plaintiff's customer was even willing to modify their labeling expectations to accommodate the back seam pouch, so Plaintiff continued to try to make it work with Defendant, but "the equipment was a total fail."

[8] Defendant conceded during trial that Defendant's premises did not have the requisite climate-controlled environment.

5

that the machine would not operate, even having the necessary environment at Plaintiff's site, despite repeated attempts by Defendant to cure the issue. Plaintiff wants the refund promised by Defendant and alleges Defendant breached the implied warranty of merchantability, the implied warranty of fitness for a particular purpose, the express warranty and the contract.

Defendant claims Plaintiff's failure to obtain training invalidates the express warranty.[9] Additionally, Defendant claims that the express warranty protects only latent defects and not defects caused by Plaintiff. Defendant asserts that Plaintiff's environmental conditions were not sufficient for the PVA film and Packaging Machine, causing the Packaging Machine not to function properly. Defendant contends that he revoked the statement made pertaining to the return of the equipment and refund of money upon discovering that Plaintiff's environmental conditions were improper. Lastly, Defendant argues that Plaintiff failed to have an expert test the environmental conditions of Plaintiff's premises despite Defendant's request for such test during discovery.[10]

## DISCUSSION

The issue after trial is whether the express warranty protected Plaintiff's loss. An express warranty becomes a basis of the bargain[11] and provides a buyer with security in their investment. "[T]he buyer must prove: (1) the existence of an express ... warranty, (2) a breach of the defendant's express ... warranty, (3) a causal connection between the defendant's breach and the plaintiff's injury or damage; and 4) the extent of loss proximately caused by the defendant's breach."[12] "Also,

---

[9] Defendant's Answer and testimony conflict with one another. The Answer states that Mr. McLaughlin was trained but Defendant testified at trial that Mr. McLaughlin chose not to engage in the free training. Such conflict renders this defense abandoned. Furthermore, the warranty does not contain such a provision. Moreover, it is undisputed that the machine would not operate on the required PVA film at Defendant's facility.

[10] It is not Plaintiff's responsibility to have their premises tested by an expert at Defendant's direction. The Defendant was pro se and it became clear that Defendant did not know how he could have obtained such a test.

[11] *Emmons v. Tri Supply & Equip. Inc.*, 2013 WL 4829272, at *5 (Del. Super. 2013).

[12] *Driscoll v. Automaxx*, 2016 WL 5107066, at *2 (Del. Com. Pl. 2016).

6

'the buyer must first prove compliance with any conditions precedent that the seller has imposed with respect to the warranty.'"[13] If the express warranty remedy is limited and seller is unable to conform to the remedy contained therein, the remedy fails its essential purpose and thus allows for other remedies.[14]

In the instant matter, a one-year warranty was provided to Plaintiff, guaranteeing against defects in material or workmanship of the equipment. The one-year is considered by the Court to have commenced at the time the equipment was delivered to Plaintiff, as there was no testimony at trial disputing the applicability of the warranty at the time in question and Plaintiff had not received the equipment until one year after submitting the order. It would be unreasonable to be presume that the warranty commenced and subsequently expired prior to the equipment's delivery to Plaintiff.

The remedy contained in the warranty was limited to repairing or replacing the defective components and Plaintiff was able to show by preponderance of the evidence that the equipment bargained for was defective upon receipt. Plaintiff waited one year for the manufacture and delivery of the Packaging Machine, which did not perform as bargained for, and made good faith efforts to allow Defendant to cure the defect. Despite repeated attempts, Defendant admittedly could not get the equipment to operate with PVA film.[15] Furthermore, Defendant never brought to Plaintiff's attention any issues with the conditions of Plaintiff's facility.[16] Rather, Defendant continued to tinker with the equipment, further evidencing the source of the problem. Defendant further acknowledges the defective equipment by admittedly offering to refund Plaintiff's money

---

[13] *Id.*

[14] 6 *Del. C.* § 2-719(2).

[15] Defendant only alleges that he was able to get the machine working in his facility, which is irrelevant due to Defendant's inability to test the equipment's operability with PVA film due to the lack of a climate controlled environment.

[16] At trial, Defendant made unsupported allegations about the conditions at Plaintiff's facility. Plaintiff, however, submitted evidence supporting its claim that its facility met the standards contained in the Monosol Technical Bulletin.

upon return of the equipment. Defendant's allegation that he later retracted this statement is without merit, as Defendant admits that he doesn't remember communicating this but merely ensures that he must have.

Defendant relies on the argument that Plaintiff's building, which housed the Packaging Machine, had insufficient environmental conditions which caused the malfunction of the Packaging Machine, and thus breached the warranty terms. The warranty states, "[the] guarantee shall apply only to components which fail because of defects in material or workmanship provided the equipment has been operated for the purpose and under the conditions for which it was designed." Plaintiff submitted photos of the heating, ventilation and air conditioning system, the insulated production room, and thermostat and humidity sensor showing the environmental capabilities of the room, along with testimony authenticating the photos as evidence of Plaintiff's ability to meet the specified conditions recommended by the Monosol Technical Bulletin. Defendant offered mere speculation that either the insufficient environmental conditions of Plaintiff's building or the PVA film's lack of freshness were the cause of the machine's malfunction.

The warranty remedy of repairing or replacing defective components is an insufficient cure of Plaintiff's problem. Plaintiff allowed Defendant approximately two months to troubleshoot the issue, which resulted in Defendant effectively giving up and stating that the equipment could be returned for a refund. For Defendant to expect that Plaintiff must accept a *potentially* repaired Packaging Machine in December 2017[17], after Plaintiff waited 18 months by this time to receive a properly functioning machine and had already made other arrangements to mitigate their

---

[17] Pl.'s Ex. 10. Defendant's wife, Xiao Feng, testified at trial that this December 2017 email referencing pickup of the equipment which was "functioning properly," meant that the Packaging Machine was functioning using a film that was not PVA film.

8

damages, is unreasonable. Defendant's remedy failed its essential purpose and thus allows Plaintiff the return of the price paid as evidently agreed by the parties.

Plaintiff met its burden of proving breach of warranty caused by Defendant, as well as Plaintiff's own compliance with the warranty terms. Plaintiff's return of the inoperable equipment in reliance on Defendant's statement to do so for a return of the purchase price, entitled Plaintiff to a refund of the money paid for the returned items. Plaintiff paid a total of $30,482.00 towards the total purchase price of $38,585.00 and kept the $5,800.00 Conveyer.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** this 29th day of January, 2019, that judgment be entered against Defendant in the amount of $24,682.00, plus pre- and post-judgment interest at the legal rate, plus costs.

The Honorable Carl C. Danberg
Judge

cc:     Patricia Thomas, Judicial Case Manager

9